UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

CHUCK SCHALK and ROBERT OWENS,                    :
on behalf of themselves and the membership
of Transport Workers Union of America,            :
Local 562, AFL-CIO,                                        03 Civ. 8045 (PAC)
                                                  :
                    Plaintiffs,                            OPINION AND ORDER
                                                  :
        -against-
                                                  :
TRANSPORT WORKERS UNION OF
AMERICA, AFL-CIO, et al.,                         :

                    Defendants.                   :

----------------------------------------------------------------x


                HONORABLE PAUL A. CROTTY, United States District Judge:


                This dispute arises out of the turmoil in the domestic airline business in

the aftermath of the terrorist attack on September 11, 2001.  In early 2003, American

Airlines sought almost $2,000,000,000 in concessions from its unionized employees in an

effort to avoid bankruptcy.  Approximately $600,000,000 of that amount was sought

from Defendant Transport Workers Union ("TWU"), which represents airline employees,

including American Airlines.  The parties entered into an agreement in March 2003

("Restructuring Agreement"), which granted American Airlines substantial concessions.

As might be expected, the concessions ("give backs") caused a bitter debate within the

TWU's membership.  Many members and Locals bitterly criticized the TWU leadership

for "caving in."  In April 2003, Local 562, formerly headed by Plaintiff Chuck Schalk

("Schalk") as President, and Plaintiff Robert Owens ("Owens") as Secretary Treasurer of

Local 562, filed a lawsuit to enjoin implementation of the Restructuring Agreement. Schalk's and Owens' Local was joined by four other Locals. Numerous members signed petitions in support of the litigation. United States District Judge Preska denied a preliminary injunction and subsequently, on stipulation of the parties, dismissed the lawsuit on July 31, 2003.

At the same time, Aircraft Mechanics Fraternal Association ("AMFA"), a rival union to the TWU, sensed a good opportunity to supplant the TWU as the collective bargaining representative for employees in the airline industry. By Summer 2003, AMFA had collected authorization cards from almost 50% of the American Airlines mechanics. At 50%, the cards might have necessitated an election at which AMFA could have replaced the TWU as the collective bargaining representative.

The TWU adopted vigorous counter measures. One such measure, proposed in August 2003, was a loyalty letter in which the Presidents of all Locals pledged to support the TWU over AMFA. Schalk and several others did not sign the letter in the form presented. Consequently, each of them was charged with violations of the TWU's Constitution. In subsequent negotiations over the proposed letter, each charged official was offered the opportunity to pledge loyalty to the TWU in mutually satisfactory words. Eventually all did, save Schalk, whose letter was rejected as an inadequate pledge of loyalty during the AMFA attack.

Owens engaged in different conduct. He posted a number of electronic messages on his website which appeared to support and prefer AMFA to the TWU.

In August 2003, the TWU, acting through its International President, Sonny Hall, brought charges against both Schalk and Owens, and suspended both from

their offices, pending the hearing on the charges.  The charges against Schalk were based on his refusal, after extensive negotiations, to sign an acceptable letter to his Local advising them that he supported the TWU continuing as the union representative for the members, as opposed to AMFA.  (Little Decl., Ex. 6.)  The charges against Owens were based on his postings on an internet site in which he advocated replacing the TWU with AMFA.  (Little Decl., Ex. 3.)  The charges alleged conduct unbecoming[1] to members of the Union, and specifically "working in the interest . . . of any organization dual to the TWU."  "Dual unionism" is understood to mean any effort which undermines the Union and helps a rival union become the collective bargaining representative of the employees. (Little Decl., Ex. 1.)

        Neither Schalk nor Owens contest the TWU's right to defend itself against a raiding union.  Similarly, both accept that the TWU may discipline or remove Local officers who refuse to participate in the defense of the Union.  The charges were heard by separate hearing panels, which were conducted in accordance with the TWU Constitution.  Schalk and Owens testified; they challenged the Union's exhibits and witnesses, and they were allowed to present their own evidence and witnesses.  Late in September 2003, after considering the matter pending before them, each panel unanimously decided against Schalk and Owens, finding that each had engaged in conduct unbecoming a member of the TWU and had violated his oath of office, and permanently removed them from their office as President and Secretary Treasurer, respectively.  The panel decisions were accepted by the International Executive

---

[1]  Union officers take an oath to support the TWU.  Unbecoming conduct includes "advocating . . . the withdrawal from the [TWU] of any Local Union or any member or groups of members."  (Little Decl., Ex. 1.)

Committee ("IEC") of the TWU on September 30, 2003.  The IEC reduced the proposed

permanent ban on holding office to a three year suspension of that right.  In other words,

Schalk and Owens could run for office again after September 2006.

Upon their removal from their elected positions, Schalk and Owens

commenced this litigation challenging their removal as elected officers of Local 562.

They contend that they were not removed because of "dual unionism" or for advocating

AMFA as an alternative to the TWU, but rather because of the vigorous opposition to the

TWU leadership and "their scathing criticism of individual defendants" for entering into

the Restructuring Agreement with American Airlines in March 2003.  They contend that

their removal violated their rights of free speech protected by § 101(a)(2) of the Labor

Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(2).

Defendants now move for summary judgment on Counts One (Schalk) and

Two (Owens) of the Complaint that they were fired in violation of their rights under 29

U.S.C. § 411(a)(2).

### APPLICABLE STANDARDS FOR SUMMARY JUDGMENT

Summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil

Procedure, may be granted only where and when there is no genuine issue of material

fact for trial.  The moving party must be entitled to judgment as a matter of law.  Celotex

Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The substantive law underlying the claims

at issue determines whether a fact is material.  "Only disputes over facts that might affect

the outcome of the suit under the governing law will properly preclude the entry of

summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The

court does not resolve the facts, but rather decides only whether there are any factual

issues to be tried.  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986).  If no

genuine issue of fact exists, after considering all the pleadings, deposition admissions,

affidavits, answers to interrogatories, and other materials on file, and resolving all

ambiguities and having drawn all inferences in favor of the non-movant, then summary

judgment is appropriate.  Anderson, 477 U.S. at 247-48.  The evidence supporting the

non-movant's case must be so weak that a rational jury could not find in his favor.  Gallo

v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (1994).

## UNION MEMBER'S RIGHT TO FREE SPEECH

The parties agree that resolution of the dispute is controlled by the Labor

Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(2), which

provides:

> (2)  Freedom of speech and assembly
>
> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

In addition to agreeing on the controlling law, Plaintiffs make the

following concessions:

> (1)  that "the Courts give deference to labor unions in managing their internal affairs, as long as they do so within bounds of the law." (Pls.' Mem. in Opp. 5);

(2)  the trial procedures implemented by the TWU and followed here comport with the law and the TWU's Constitution. (<u>Id.</u>);

(3)  the TWU has the right to adopt reasonable rules to protect the TWU as an institution. (<u>Id.</u> at 6);

(4)  the TWU's rules against dual unionism or advocating that members withdraw from the TWU in favor of another union are appropriate and reasonable. (<u>Id.</u>);

(5)  the TWU has the right to defend itself against a raiding labor organization and the TWU may discipline or remove Local officers that refuse to participate in that defense. (<u>Id.</u>)

## PLAINTIFFS' ARGUMENTS

Notwithstanding these concessions, Plaintiffs maintain that the real reason for their removal was not the reason contained in the charges preferred against them (disloyalty to the TWU when it was under AMFA attack), but rather was their earlier criticism of the TWU's leadership and the individual defendants.  Schalk claims that the demand to sign an appropriate letter is contrived.  In making this argument, he points to the fact that the letter signed by others was never used in the "solidarity" campaign.  Indeed, Schalk's replacement, Mazza, who could have signed a loyalty letter, was never asked to sign.  To Schalk, this demonstrates the sham nature of the charges preferred against him.  (Shalk Decl. ¶¶ 1-5.)

Schalk also contends that the timing of the charges, which followed immediately upon his voluntary dismissal of the Federal lawsuit challenging the Restructuring Agreement, suggests the true reason for the disciplinary action.  (<u>Id.</u>) Schalk claims selective enforcements, because others showed support for AMFA, but were not disciplined.  Finally, as to Owens, his internet postings are said to be a selective "culling of a handful of statements . . ." out of thousands.  (Pls.' Mem. in Opp. 14.)

Both Schalk and Owens claimed to be protected by their free speech rights under 29 U.S.C. § 411(2). Their argument that they were engaging in free speech, as opposed to conduct unbecoming a member and dual unionism, is said to create a fact question.

## DEFENDANTS' ARGUMENTS

Defendants argue that they were clearly within their rights in disciplining both Schalk and Owens for their disloyal conduct as officers. A union member's right to free speech is qualified by the union's right to adopt reasonable rules concerning the maintenance of the labor organization as an institution. Schalk and Owens were more than mere members and, as officers, owed a higher duty of loyalty. Moreover, Schalk's and Owens' failures and derelictions were not conduct of members, but rather their conduct as officers. The discipline imposed was targeted. While both were removed from their official position, neither was ousted from the TWU, where they remained free to continue their criticism, including their advocacy for positions contrary to those of the TWU.

## DISCUSSION

## I.

The Court starts from the premise that a union's internal affairs should not be interfered with lightly. The Plaintiffs' concessions about the TWU's Constitution and the hearings conducted in accordance with its reasonable rules for disciplinary proceedings confirms the Court's hastening to intervene. Unions "should be self-governing, free from judicial oversight." Franza v. I.B.T., 869 F.2d 41, 48 (2d Cir. 1989). Of course, this reluctance must give way if the union directly infringes a

member's rights as a member, as opposed to discipline imposed on an union officer or employee.  Id.

In July and August 2003, the TWU was under substantial and immediate attack from AMFA.  AMFA was seeking to take advantage of the turmoil in the airline industry and advance its own organizational efforts.  Certainly, union members have the right to select their own collective bargaining agent and their own officers, and to express their views as they deem appropriate.  Each member is free to continue with his existing collective bargaining representative, or advocate for new leadership or for a change in representation.  Similarly, every union member has the right to speak out to support or denounce union leadership, without fear of retaliation or repression.  Just as clearly, however, the union has the right to preserve and protect its autonomy and existence.  The union may promulgate "reasonable rules as to the responsibility of every member toward the organization as an institution," 29 U.S.C. § 411(2), and certainly may expect its officers to adhere to those rules.

## II.

Members' rights are protected by the Bill of Rights of Members of Labor Organizations, 29 U.S.C. § 411.  The LMRDA's primary objective is to ensure "that unions . . . be democratically governed and responsive to the will of their memberships." Finnegan v. Leu, 456 U.S. 431 (1982).  But the Finnegan court distinguished between rights as members of the union and rights as union officers and union employees.  Id. at 436-37.  Union officers and employees do not fall within the protection of 29 U.S.C. § 411.  The Court found that Congress did not intend "to protect a member's status as a union employee or officer."  Id. at 431.  It then cited to the legislative history which

states:  "[the] prohibition on suspension without observing certain safeguards applies only to suspension of membership in the union; it does not refer to suspension of a member's status as an officer of the union."  Id. at 438 (emphasis added by Finnegan court).

Several years later, however, the Supreme Court adopted a refinement of the Finnegan doctrine.  In Sheet Metal Workers' Intern. Ass'n v. Lynn, 488 U.S. 347 (1989), Lynn was an elected local officer who spoke out against a proposed local union dues increase, arguing that the Local's extravagant expenditures were the chief cause of the Local's financial dilemma.  After the International imposed a trustee to manage the affairs of the Local, the trustee proposed a dues increase.  Lynn said he would support the dues increase, if the trustee would agree to cut the Local's expenditures; but the trustee refused to do so.  At Lynn's direct urging, the Local voted against the dues increase. Immediately thereafter, Lynn was summarily removed from his elected position.

The Supreme Court held that the removal of an elected official in retaliation for his opposition to a dues increase sought by the trustee was a violation of 29 U.S.C. § 411.  The Court distinguished Finnegan on the theory that a newly elected president could pick his own subordinates, even if the patronage related discharges had some chilling effect on the union officials whose jobs were terminated, because it furthered the democratic goals of the LMRDA.  That rational was not applicable, however, where an elected union official was speaking as a member, and thereafter disciplined for his speech.

The distinction makes sense:  The purpose of the law is to further union democracy and to give effect to free elections.  There was no good reason to encumber a

newly elected official with the janizaries of the deposed leader.  Finnegan allowed the new leader to select as officers union members who would be loyal to him.  Mr. Justice White's concurring opinion in Lynn explained that the differing results in Finnegan and Sheet Metal Workers did not turn "on whether an officer is elected or appointed.  Rather, its inquiry is whether an officer speaks as a member or as an officer in discharge of his assigned duties.  If the former, he is protected [by LMRDA's free speech provision].  If the latter, the issue becomes whether the considerations deprive the officer/member of the protection of that title."  488 U.S. at 360.

## III.

Mr. Justice White's distinction is sound and helpful.  It is now "well settled that [29 U.S.C. § 411] only protects union members against a loss of membership rights due to being unfairly disciplined by a union.  It does not protect union members in their official capacity (as elected or appointed officials) from losing rights related to their official position."  Green v. Brigham, No. 03-cv-5190 (JG), 2005 WL 280327, at *4 (E.D.N.Y. Feb. 3, 2005); see also United States v. I.B.T., 156 F.3d 354, 361 (2d Cir. 1998); Cotter v. Owens, 753 F.2d 223, 226 (2d Cir. 1985).

In addition to the protection afforded to a union official acting or speaking as a member (as opposed to carrying out his official duties), the Second Circuit will also protect union officers from removal where such action is part of a "purposeful and deliberate attempt . . . to suppress dissent within the Union."  Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am., 152 F.3d 178, 184 (2d Cir. 1998) (quoting Schonfeld v. Penza, 477 F.2d 899, 904 (2d Cir. 1973)).  To fall within the coverage of this provision, "a plaintiff must present 'clear and convincing proof' that her dismissal

was 'part of a series of oppressive acts by the union leadership that directly threaten the freedom of members to speak out.'" <u>Maddalone</u>, at 184 (<u>quoting</u> <u>Cotter</u>, at 229).  Thus, the question is whether the discipline imposed by the TWU is appropriate for conduct unbecoming an officer and engaging in dual unionism, or was the discipline a deliberate attempt to suppress dissent within the TWU?

### IV.

Schalk and Owens were officers in Local 562.  They were suspended and then removed from office pursuant to procedures which they concede were fair and adequate.  Their chief contention now is that the loyalty letter which Schalk refused to sign was pretextual, and the letter was never intended for any use other than to "get" Schalk for his outspoken objection to the Restructuring Agreement and subsequent lawsuit.  Moreover, other TWU union officials engaged in similar conduct with regard to AMFA, but they were not disciplined.  The selective discipline imposed on Schalk demonstrates the TWU's real motive in imposing discipline on Schalk.  This argument, Plaintiffs claim, creates a fact issue sufficient to defeat Defendants' motion for summary judgment.

As to Owens, the argument runs on a similar track.  His postings on the internet suggesting that TWU members sign AMFA's bargaining authorization cards were a skewed sampling of a far larger set of postings by Owens.  Owens asserts that he was exercising his free speech rights and should not have been disciplined for it.  The conclusion Owens draws from this is that he was retaliated against for engaging in his earlier protected speech in filing the lawsuit attacking the Restructuring Agreement.

### V.

Schalk's and Owens' position is not based on facts.  It is only an argument, which does not create a genuine issue of material fact.  Instead of rebutting the facts set forth by Defendants, the Plaintiffs merely spin a different tale.

Plaintiffs do not challenge the TWU's right to protect itself; nor do they challenge the adequacy or the propriety of the TWU's process for imposing discipline.  The charges brought against both Schalk and Owens were clear and specific.  There is no doubt that both Plaintiffs understood the charges and defended against them.  Finally, the discipline imposed left the membership rights of both intact.  The charges dealt with their conduct as officers, not as members.

What Plaintiffs are really suggesting is that the Court should look behind the TWU's disciplinary charges and adopt Plaintiffs' contention that the charges of union disloyalty were nothing more than camouflaged retaliation for engaging in free speech.  The Court is reluctant to intrude in the TWU's internal disciplinary matters.  It should not "interpret the union's regulations in order to determine the scope of offenses warranting discipline…." Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers. v. Hardeman, 401 U.S. 233, 245 (1971).

Undoubtedly, the TWU's disciplinary process was instituted several months after Schalk's and Owens's Local commenced litigation.  But we are all aware of the logical fallacy:  post hoc ergo propter hoc.  Furthermore, in the litigation, Schalk's and Owens' Local was not the sole plaintiff.  There were four additional Locals that joined in.  Numerous individual union members signed petitions in support of the legal challenge.  (Shalk Decl., Ex. A.)  It is significant that no charges were brought against any local officials or any union members for instituting the legal challenge or for

criticizing the Restructuring Agreement.  Not only were no charges brought, but the claimed significance of this sequence is further diluted by considering the factual circumstances which gave rise to the charges actually filed.

The charges against Schalk and Owens were instituted right in the middle, indeed contemporaneous with, the TWU's all out battle to repulse AMFA's attack on its status.  The TWU thought it best to demonstrate a united, combined front by the leadership of each and every Local to convince its membership that they should reject AMFA and stay with the TWU.  Several union officials, in addition to Schalk, refused to sign the letter in the form proposed by the TWU.  All who refused were treated the same: they were charged with disloyalty.  Each of the charged officials was then treated the same; each had an opportunity to pledge loyalty in mutually satisfactory words. Eventually all, save Schalk, submitted satisfactory pledges of loyalty and support.  The charges preferred against Schalk, and the conduct of the proceeding, focused solely on the alleged lack of demonstrated loyalty as an officer.  The hearings conducted by the panel did not focus on the litigation, which by then was six months in the past.

As to Owens, there is no doubt that he posted the notices.  His current explanation that he was quoting others is facetious, and certainly does not create a genuine question of fact.

Schalk also argues that demanding the loyalty letter was not a requirement of the TWU's Constitution.  This argument is not well based.  Any legally organized and recognized organization has the right to protect itself from outside attacks.  What measures are appropriate are best determined by the organization; and if generally reasonable, the means chosen are not subject to judicial second guessing.

In light of AMFA's attack, the TWU's request that all local Presidents to sign a letter with a full pledge of continued support was plainly reasonable. The letter was not designed with Schalk in mind; it was not targeted towards nor directed against Schalk. Instead, it was plainly a call for all officers to stand together; a call which Schalk, in his role as an officer, refused. Schalk was not asked to sign as a member; he was asked to sign as an officer. He refused. The discipline imposed removed him as an officer, but preserved his status as a member.

As to Owens, amidst all his internet postings, he never posted a single statement in support of the TWU. Not that he had to, but the fact that he did not, suggests his true opinion was reflected in the postings he undoubtedly made. Instead, he makes the argument that considering the volume of his postings, the offending material was quite limited. This is an invitation for the Court to substitute its judgment for that of the concededly fair hearing process. The Court must decline.

The Court finds that the discipline imposed was not in retaliation for the exercise by Schalk and Owens of their membership rights as union members; and no rational jury could find otherwise. Instead, they were removed from office because of their conduct that was unbecoming to their office. This determination was made only after adequate notice of the charges was provided, and was followed by a fair hearing at which all charges and defenses could be aired.

The discipline imposed, however, may have gone too far in one respect—the suspension of Schalk's and Owens' right as members to run for elected office for a three year period. But, it is not at all clear if this is the gravamen of Plaintiffs' Complaint. Indeed, it appears not be since it is not even mentioned in the Prayer for

three year period. But, it is not at all clear if this is the gravamen of Plaintiffs' Complaint.

Indeed, it appears not be since it is not even mentioned in the Prayer for Relief. In any

event, the Court need not address this issue since it is now moot: the suspension of the

members' right to run for election has long since passed, and Plaintiffs are under no

current disability.

Defendants' motion for summary judgment dismissing Count One and

Count Two of the Complaint is GRANTED.

Dated: New York, New York
       May 3, 2007

SO ORDERED

PAUL A. CROTTY
United States District Judge

15

Copies Mailed To:

Michael G. O'Neill, Esq.
30 Vesey Street
New York, New York  10007

Joseph J. Vitale, Esq.
Cohen, Weiss and Simon, LLP
330 West 42nd Street
New York, New York  10036